STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-841


SUCCESSION OF ALICE FOSTER COTTRELL

VERSUS

IRMA LAVERGNE QUIRK


**********
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 03-P-2816-A
HONORABLE ROBERT BRINKMAN, DISTRICT JUDGE
**********

**GLENN B. GREMILLION
JUDGE**

**********


Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.


**Cooks, J., Dissents in part.**
**I believe "The balance of my personal belongings I die possessed of every nature and kind," is broad enough to include not only "furniture, automobiles, clothes, jewelry, etc." but cash, bank accounts, and other forms of instruments.**


**AFFIRMED.**

**A. Gerard Caswell**
**P. O. Box 1600**
**Eunice, LA 70535**
**(337) 457-7378**
**Counsel for Appellees:**
     **Ruby J. Fisher McGlothin**
     **Estate of Bessie Fisher Summers**
     **Ray Fisher**
     **Clie Mae Beacham Price**
     **Floyd Leon Simpson**
     **Aline Marie Simpson Minniear**
     **Patricia Simpson Santos**
     **Estate of Claude Vincent Foster**
     **Dorothy Foster Kneipp**
     **Rose Ella Simpson Cesarini**
     **Estate of Lillian Ewing**
     **Annetta Foster Sanders**
     **Vera June Foster Cornay**
     **William Gerald Simpson**
     **Helen Maxine Simpson Die**
     **Lester Wayne Simpson**
     **Sandra Jean Simpson Bates**
     **Ela Ann Simpson Kite**
     **William Louis Simpson**
     **Gerald Wayne Simpson**
     **Dorothy Lee Simpson Phillips**
     **Patricia June Simpson Miller**
     **Myrtle Ivy Simpson McCullough**
     **Vernon Hardin Simpson**
     **Mary Carolyn Simpson Stagg**

**Bruce A. Gaudin**
**100 W. Bellevue St.**
**Opelousas, LA 70570**
**(337) 948-3818**
**Counsel for Appellant:**
     **Irma Lavergne Quirk**

**M. Terrance Hoychick**
**Young, Hoyhick & Aguillard**
**P. O. Drawer 391**
**Eunice, LA 70535-0391**
**(337) 457-9331**
**Counsel for Appellees:**
     **Doris Reese Stagg**
     **Dixie Lea Broussard Saucier**

**Jacque B. Pucheu, Jr.**
**Pucheu, Pucheu & Robinson**
**P.O. Box 1109**
**Eunice, LA 70535**
**(337) 457-9075**
**Counsel for Appellee:**
  **Austin Cottrell**
  **Sarah Cottrell**
  **John A. Cottrell, Jr.**

GREMILLION, Judge.

The defendant, Irma Lavergne Quirk, appeals the judgment of the trial court finding that she was not a universal or general legatee in the succession of Alice Foster Cottrell. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Cottrell died in June 2003. She and her late husband had no children. Her closest living relative, her sister, Belle Foster, died in September 1999, and she also had no children.

Cottrell executed a three page olographic will dated June 17, 1994. She also executed an olographic codicil dated April 20, 1996.[1] In her last will and testament, Cottrell named twenty-two legatees to receive all of her assets. The codicil made an additional particular legacy. The last legacy contained in the testament was to Quirk, in which Cottrell left her "residence . . . and the balance of my personal belongings I die possessed of every nature and kind."

Two of the legatees, George Joubert and Foster, predeceased Cottrell causing these legacies to lapse. The legacy to Joubert bequeathed 164 acres in Acadia Parish. The legacy to Foster bequeathed one-half of sixty acres located in Morrow, Louisiana, and "all jewelry I die possessed of and any remaining cash after all debts are paid." The co-administratrixes and counsel for the estate decided that since there were no universal legatees under the will, the lapsed legacies would go to the nearest living relatives of Cottrell, who were twenty-five cousins.

---

[1] The codicil, which was handwritten on an envelope, stated, "As a codicil to my last will and testament I give and bequeath my Merrill Lynch account to John Austin Cottrell, my nephew."

1

In November 2004, the co-administratrixes filed a petition for authority to sell immovable property, namely the immovable property bequeathed to Joubert and Foster. Quirk filed a rule to interpret testament in January 2005, urging that she should be named the universal legatee under the will and that the heirs should not receive the proceeds from the sale of the immovable property. Following a hearing in March 2005, the trial court ruled that Quirk should only receive personal items such as "furniture, automobiles, clothes, jewelry, etc.," but not bank accounts or other forms of investments. The remainder of the assets including financial investments and immovable property that had been willed to Joubert and Foster were to devolve by intestacy.

The judgment homologating tableau of distribution and of possession was signed by the court in April 2005. It identified Quirk as the legatee of Cottrell's home, jewelry (including the jewelry which accreted to her after the lapse of Foster's legacy), and all personal belongings, including "clothing, furnishings, appliances, memorabilia, and photographs." Quirk now appeals and assigns as error the trial court's finding that she was not a universal or general legatee and in finding that the balance of Cottrell's estate, which was not bequeathed to the special legatees, including the lapsed legacies, should devolve by intestacy.

**LAW**

The trial court's factual findings as to the issue of whether Quirk is a universal or general legatee under Cottrell's testament are afforded great weight and will not be disturbed in the absence of manifest error. *See Succession of Young*, 96-1206 (La.App. 3 Cir. 3/5/97), 692 So.2d 1149.

2

In interpreting a will, Louisiana courts are guided by La.Civ.Code arts. 1611 through 1616. These articles provide that the trial court must ascertain the intent of the testator and that the testator's intent must be given effect. La.Civ.Code arts. 1611, 1612. "The cardinal principle of the interpretation of acts of last will is to ascertain and honor the intent of the testator ascribing meaning to a disposition so that it can have effect." *Lingo v. Courmier*, 95-542, p. 3 (La.App. 3 Cir. 11/2/95), 667 So.2d 1091, 1093, *writ denied*, 96-0795 (La. 5/10/96), 672 So.2d 925. When the words of the testament are plain and unambiguous, the testator's intent should be ascertained from the language used in the testament, giving the words used their usual significance. *Succession of Vatter,* 192 La. 657, 188 So.2d 732 (1939). The language used in the testament "must be understood according to its common, popular acceptation." *Id*. at 668, 736.

The Joubert and Foster legacies lapsed because they predeceased Cottrell. La.Civ.Code art. 1589. "Testamentary accretion takes places when a legacy lapses." La.Civ.Code art. 1590. Louisiana Civil Code article 1595 states:

> All legacies that lapse, and are not disposed of under the preceding Articles, accrete ratably to the universal legatees.

> When a general legacy is phrased as a residue or balance of the estate without specifying that the residue or balance is the remaining fraction or a certain portion of the estate after the other general legacies, even though that is its effect, it shall be treated as a universal legacy for purposes of accretion under this article.

"A universal legacy is a disposition of all of the estate, or the balance of the estate that remains after particular legacies." La.Civ.Code art. 1585. "A general legacy is a disposition by which the testator bequeaths a fraction or a certain proportion of the estate, or a fraction or a certain proportion of the balance of the estate that remains

3

after particular legacies." La.Civ.Code art. 1586. "Any portion of the estate not disposed of under the foregoing rules devolves by intestacy." La.Civ.Code art. 1596.

At issue in this case is whether Quirk is a universal or general legatee because of Cottrell's use of the words "the balance of my personal belongings I die possessed of every nature and kind." Quirk argues that personal belongings include cash and property or, in the alternative, that if this phrase applies only to movables that the bequest is a general legacy of a portion (i.e. movables), and pursuant to article 1595, she should be treated as a universal legatee. Having reviewed the record, we find no manifest error in the trial court's ruling. The trial court stated in its reasons for judgment:

> The decedent took special care in spelling out how particular legacies were to be paid to her nieces, nephews, and cousins. She also took particular care in making bequests of bonds. After making several particular legacies, she appears to dispose of the balance of her estate to her sister, Belle Foster, and her friend, Irma Quirk. All cash remaining after her debts were paid was to go to Belle Foster. The remainder of her personal belongings were to go to Irma Quirk. Special attention should be given to the fact that she separated cash from personal belongings in her will. That evinces an intent on the decedent's part to leave Irma Quirk personal belongings other than cash, which was to go to Belle. This court interprets the will as leaving Irma Quirk all personal belongings, except cash, after all the particular legacies regarding personal belongings have been satisfied under the will. Personal belongings would include furniture, automobiles, clothes, jewelry, etc. The conclusions reached by the court are further supported by the fact that the decedent made no changes in her will with respect to the bequests that were made to Belle Foster even though Belle Foster predeceased her by three years.

Quirk relies on *Dupuy v. Walther,* 98-669 (La.App. 3 Cir. 10/28/98), 721 So.2d 995, urging that it stands for the proposition that "personal belongings" includes immovable property and financial accounts. We disagree. In *Dupuy*, the decedent's olographic will stated, "I desire that all my personal belongings be given

4

to my brother." The decedent's brother (Walther) was the sole legatee and he was placed into possession of all his immovable and movable property. The decedent's sister (Dupuy) filed a petition to set aside the judgment of possession. Following a hearing, Dupuy's claims were dismissed and Walther was declared the universal legatee. On appeal, Dupuy argued that her brother intended to only dispose of his personal belongings and not his financial accounts or immovable property. We discussed *Succession of Meeks*, 609 So.2d 1035 (La.App. 2 Cir. 1992), *writ denied*, 612 So.2d 86 (La.1993), but distinguished it from the facts present in *Dupuy*. In *Meeks,* 609 So.2d at 1038, the appellate court stated:

> The term "personal belongings," when given its usual and ordinary meaning, would not include business property and various financial holdings. When used in a testament the term enjoys no settled or fixed technical meaning but would include those things which had some intimate relation to the person of the testratrix such as household items, jewelry, home furnishings, clothing and other items which are truly personal in nature. To hold that financial and business assets would fall within the category of "personal belongings" would give that term a strained meaning, ignoring its restrictive nature and proper signification.

We distinguished *Dupuy* from these facts in which there was more than one legatee in the testament and the testatrix had sought the advice of counsel. In *Dupuy*, there was no other legatee than Walther, and we agreed that the testator intended for Walther to be the universal legatee. We do not find that holding at odds with the facts of this case. Further, we agree with the second circuit's definition of "personal belongings" as those things which generally do not include immovable property and financial accounts. It is clear from reviewing Cottrell's testament that she intended that certain immovable property and financial holdings would go to specific persons. We find nothing in the bequest to Quirk making her a universal legatee. Additionally,

5

our review of the record convinces us that Cottrell only intended that Quirk receive any and all personal belongings as understood in the above definition. We find the trial court respected those wishes by awarding Quirk the jewelry portion of Foster's lapsed legacy.

Moreover, while counsel's alternative argument that Quirk is a general legatee because she was left a specific fraction (i.e. movables) is novel, it is not accurate. The Civil Code provides for an exclusive list of things that make up a general legacy and none were present here. *See* La.Civ.Code art. 1586. Quirk's legacy was particular and the trial court correctly found that the two lapsed legacies, other than the jewelry, would devolve by intestacy.

## CONCLUSION

The judgment homologating tableau of distribution and of possession is affirmed. All costs of this appeal are assessed against the defendant-appellant, Irma Lavergne Quirk.

**AFFIRMED.**